E. L. DAVIS (PLAINTIFF) RESPONDENT, v. KNOX COUNTY SAVINGS BANK, BANK OF EDINA, R. W. HOLT, COMMISSIONER OF FINANCE OF THE STATE OF MISSOURI, AND IN CHARGE OF SAID BANKS IN LIQUIDATION (DEFENDANTS) APPELLANTS.—118 S. W. (2d) 52.

St. Louis Court of Appeals. Opinion filed June 20, 1938.

Motion for Rehearing Overruled July 1, 1938.

*S. H. Ellison* for respondent.

*Tom B. Brown* and *Paul K. Gibbons* for appellants.

HOSTETTER, P. J.—This suit was begun in the Circuit Court of Knox County on the 9th day of April, 1937.

The petition, (caption and signatures omitted) is as follows:

"Plaintiff states that Knox County Savings Bank and the Bank of Edina are each corporations, organized under the laws of the State of Missouri, and prior to being taken over for liquidation by the Commissioner of Finance of Missouri, each of said banks was engaged in a general banking business in Edina, Knox County, Missouri.

"Plaintiff further says that Honorable O. H. Moberly at all of the times herein stated was, and he now is, the duly appointed, acting and qualified Commissioner of Finance of Missouri, and that since the first of November, 1933, Miles McNally has been, and he now is, the duly appointed, qualified and acting Special Deputy Commissioner of Finance of Missouri, in charge of the liquidation of said banks.

"Plaintiff further says that prior to November 1st, 1933, the affairs and business of each of said banks became involved and were placed

in the hands of the Finance Department of Missouri, and have remained in its hands to this date.

"Plaintiff further says that in the process of liquidation said banks became the owners of, or entitled to a beneficial interest in the following lands in Knox County, Missouri, to-wit: (Description here set out.) ·

"Plaintiff further says that in the process of liquidation of said banks it was determined and decided by said Commissioner of Finance and by said Deputy Commissioner that it would be for the best interests of said banks and of persons interested in its affairs and assets to sell said lands, and in accordance with said decision and determination they employed the plaintiff to find a purchaser ready, willing and able to buy said lands for the price and sum of $3000, and it was further agreed and understood at the time that plaintiff was to receive as his compensation for finding a purchaser all sums over $3000 which said purchaser was ready, willing and able to pay therefor.

"Plaintiff further says that at all of the times herein stated he was engaged in the real estate business, and in the business of finding buyers ready, willing and able to purchase real estate of those owning and willing to sell same, and he was and is, located in Edina, Missouri.

"Plaintiff further says pursuant to said agreement to find a purchaser for said lands he did find a purchaser therefore on, or about, February 26th, 1935, who was then and there ready, willing and able to pay therefor the sum of $3300, in the person of Henry Early, of Knox County, Missouri, and so produced him to defendants, and said Early did then and there pay on said purchase price the sum of $1000 and took possession of said lands and kept and retained the same.

"Plaintiff further says that thereafter said lands were actually deeded by said Commissioner of Finance to said Early for the price and sum of $3451, which sum went into, and increased, the assets of said banks, and that said sum of $300 so increasing said assets, was and is the money and property of plaintiff.

"Plaintiff further says that he has made demand of said Commissioner for payment, who refuses to pay same.

"Wherefor plaintiff prays judgment against defendants in the sum of $300, with interest thereon from February 26, 1935, and for his costs."

After the court had overruled defendants' demurrer to the petition they filed an answer, which is as follows:

"Now come the defendants and for the answer to the plaintiff's petition say:

"(1) Admit that the defendant banks were, and are, Missouri banking corporations, located in Edina, Missouri, and that they became insolvent in November, 1930, and were, by their boards of direc-

tors, turned over to the Commissioner of Finance of the State of Missouri, for liquidation as by law provided.

"(2) Admit that O. H. Moberly is now the regularly appointed, qualified and acting Commissioner of Finance of the State of Missouri and that Miles McNally is his legally appointed, acting and qualified Deputy Commissioner of Finance, in charge of both of said banks.

"(3) Admit that at the time this service mentioned in the petition was supposed to have been rendered, that is in the early part of 1935, the defendant banks were the owners of the James Clark farm comprising approximately THREE HUNDRED ACRES, located in Sections one (1) and twelve (12), Township Sixty-one (61), Range Twelve (12), West, in Knox County, Missouri.

"(4) Deny each and every other allegation in said petition contained. Specifically denying that the plaintiff ever had a contract to sell said lands for any sum whatever, and in this connection allege the facts to be that the said plaintiff, in January, 1935, approached the aforesaid Miles McNally, Deputy Commissioner of Finance, and offered to purchase the said farm in his own name and behalf for the sum of $3000; that after due consideration said offer was by the Deputy Commissioner, accepted, subject to the approval of the Circuit Court of Knox County, or of the Judge thereof in vacation, as by law provided; that pursuant thereto a petition was duly prepared and presented to Hon Emert C. Hilbert, Judge of the Circuit Court, at his chambers in Canton, Missouri, and the said petition, reporting the offer of the plaintiff, to buy said lands at the price and sum of $3000, and asking authorization, in the name of the Commissioner of Finance of the State of Missouri, to make, execute and deliver a deed, to said lands, to the aforesaid E. L. Davis, upon the payment by him of the sum specified, was, by the said Judge of the Circuit Court of Knox County, Missouri, rejected and disapproved.

"(5) Defendants further answering, specifically deny that the aforesaid Miles McNally had any legal right to obligate and bind the Commissioner of Finance of the State of Missouri, by any contract or purported contract, either written or oral, involving the creation of a debt or debts for said Bank of Edina, or Knox County Savings Bank, under his certificate of appointment as Special Deputy Commissioner of Finance in charge of said banks.

"Defendants having fully answered beg leave to be discharged from any obligation under said petition." The reply is as follows:

"Replying to defendants' answer, plaintiff denies he approached said McNally at any time, offering to buy the lands in question on his own account for $3000, or any other sum, and plaintiff avers that defendants, and said McNally, at all times knew that Henry J. Early was the purchaser thereof, and in March, 1935, the defendants put said Early into the actual possession of said lands under the agreement

and contract of sale stated in the petition, where he, and those claiming under him, remain to this date, and since said date in March said Early has collected the rents and profits from said land, and has exercised full control over said land.

"Plaintiff denies that he had any agreement with the defendants, or with said McNally, regarding the sale of said lands which was conditioned upon obtaining the approval of the Circuit Court, or the Judge of said court, and plaintiff further says that if any sale of said lands was not approved by the court, or Judge, such action was at the special instance and request of the defendants, without judicial inquiry, and for no other reason.

"Further replying, plaintiff says that it is admitted in paragraph four of defendants' answer that said McNally did have authority to sell said lands for the sum of $3000 net, it is wholly immaterial whether he did, or not, for the reason that at all times stated in the petition, and before said dates, said Moberly had full knowledge of all of the facts, and he held said McNally out to plaintiff in said transaction, and in similar transactions, as fully authorized to act in the premises, and he accepted said Early as purchaser, and he accepted the fruits of plaintiff's labors, and he accepted said $3000, together with $300, being in fact the money belonging to plaintiff under the agreement, and the additional sum of $151 represented the amount of taxes and some additional items which had accrued after Early took possession of said lands in March, and which had been paid by defendants, and did not, in fact, represent any additional purchase price, and for all of the above and foregoing reasons the defendants are estopped to question said sale, or the authority of McNally to make the contracts before mentioned.

"Plaintiff further says that authority in said McNally to engage plaintiff to find a purchaser for said land is a matter incident to his right to sell the lands, and incident to his position as Deputy Commissioner.

"Wherefore plaintiff prays judgment as prayed in the petition."

The plaintiff's contention is that he was employed by Miles McNally, Special Deputy Commissioner, to find a purchaser for the three hundred acre farm belonging to the two banks in liquidation at $3000, and that he found a purchaser in the person of Henry Early, sometimes called by the witnesses "Deacon" Early, who was ready, willing and able to pay $3300 for the farm, and that under such contract with Special Deputy Commissioner McNally, he was to receive as his compensation all over $3000 as commission, to-wit: $300.

Mr. McNally's contention was that under his negotiations with plaintiff he was willing to sell the farm to plaintiff at $3000 (subject to the approval of the judge of the circuit court) but not to Henry Early. Henry Early died on April 23, 1937, and the case was not tried until in June, 1937, hence no testimony of his is in the record.

The testimony is quite confusing and conflicting on this point. The plaintiff testified that he tried to sell the farm to several parties while acting as agent for Mr. McNally, and, under his appointment, but without success until he contacted Mr. Henry Early, when the following occurred: "So he wanted to know what I wanted for it. I said, $3600. He said, I won't give that. I will give $3300. . . . I studied a little bit and I said, I will sell it to you. That is making me a dollar an acre for selling it. So we went up and Mr. Claude Smith (an attorney) drew up the contract and Mr. Early went down to the bank and got a $1000 check. . . . We went down, I and Mr. Early, after the contract was drawn, and presented the check to Mr. McNally and told him that this farm was sold and here was a thousand dollars payment on it. In the contract it was agreed that the deed would be delivered in thirty days or he would get the check or money back. McNally carried the check forty days and Mr. Early took possession after thirty days was up and Mr. McNally says to me, "Before I go any further with this sale I am going to prepare a petition and circulate it among the biggest depositors of this bank and see if they are satisfied with this sale. I said, You prepare the petition and I will circulate it for you, which he did. I went all over this town and out in the country to 65 depositors here and sent it to Graef in Pennsylvania and he registered it back to me—made 66 depositors."

He further testified that he took the petition to Judge Hilbert and, after he examined it, he said, "It is the people's money and not mine. Go back and prepare your order to sell this farm;" that in about an hour McNally came to him and said, "This sale is blowed up;" that Paul Gibbons had made objections on the ground the farm was worth more money, but found that he was mistaken and prepared the order and he (witness) took it to Judge Hilbert, who refused to sign, because of objections, but said he would sign if either one of these fellows would tell him to do so; that "it drug along for a year" and they "made Early a deed to it;" that the $1000 check was made by Early to him and he signed it over and delivered it to McNally.

Honorable Emert C. Hilbert, the regular judge of the first judicial circuit, which includes Knox County, was called as a witness by plaintiff and testified in substance as follows:

That he was not positive that both Messrs. Davis and McNally came to him in chambers at Canton in the early part of 1935, but that he did recall that Mr. Davis (the plaintiff) came alone with a petition for an order to sell the farm in controversy; that when the petition for an order to sell the farm, or application to sell, was first presented to him it was his recollection that Mr. Davis came alone and told him that Mr. McNally had sent the petition or application, asking that he sign it, and, being generally familiar with the location, as

742

he 'was, that he thought the price was inadequate and refused at that time to approve it; that he was of the opinion that later McNally and Davis both came to his office together, but he was not certain, and that it was his opinion that according to the information he got from McNally, that Davis was making the sale and found a purchaser; that he later did approve the sale, but that no judicial inquiry as to the value of the land was made by him; that the later approval of the sale was one made to Henry J. Early for $3451; that he would have to see the order to be sure about that; that he did not recall the purchaser was designated in the first or second application; that he did recall this, that in the first application the consideration to the banks was to be $3000 and in the second, or the application which he did approve, it was something over $3400; that the second application was about a year after the first.

Under date of March 23, 1935, Judge Hilbert sent a letter by plaintiff, directed to Mr. McNally, reading as follows:

"Miles McNally,

"Deputy Comm. of Finance,

"Edina, Mo.

"Dear Sir:

"I am herewith returning to you your application for order to sell 300 acre tract of land, now held and owned by The Bank of Edina and Knox County Savings Bank, to E. L. Davis for the price and sum of $3000.

"I do not feel that I would be justified in making the order for the reason that interested parties seem to think the land should be sold for a better price, and is in fact worth more money than offered, and as a matter of protection to both you and myself I do not feel that I can approve the application.

"Under the existing feeling it could result only in censure for both you and I, while if the land is sold at public sale it relieves both of us.

"Sorry I find it necessary to take this action, more especially as at the time first mentioned to me I felt and still feel that you thought the offer fair, but the number of complaints convince me it best for both of us to sell at public sale.

"Yours truly,

"(Signed) E. C. Hilbert, Judge."

The first petition, which was presented to Judge Hilbert and which he refused to entertain, contained this clause: "Petitioner further states that after diligent efforts on his part, to procure a purchaser for said land, that E. L. Davis has made the best offer therefor, namely, $3000 in cash, subject to the approval of the court and final transfer of title;" although plaintiff, in his testimony, said it contained Mr. Henry Early's name as the purchaser and that he could prove it. But, he was evidently mistaken because the petition itself was thereafter offered in evidence showed that he, the plaintiff was

named as the proposed purchaser at $3000. The unsigned order of sale also showed that the purchaser at $3000 was Mr. Davis, the plaintiff.

It also appeared in testimony that the plaintiff, Mr. Davis, put Harold Early, a nephew of Henry Early, in possession of the farm in April, 1935, and it is claimed by Mr. McNally that he did not know that there was anyone on the land until in December, 1935, and that he caused a notice to vacate to be served on the occupant of the farm at that time.

The defendants then offered the written appointments of Mr. McNally as Special Deputy Commissioner of both banks by the Commissioner of Finance, Mr. O. H. Moberly. These appointments, signed by the Commissioner of Finance, contained, *inter alia,* the statements that they were for a term beginning November 1st, 1933, and ending at the final liquidation of the trusts, or, at the pleasure of the Commissioner of Finance and *did delegate to McNally as Special Deputy Commissioner such powers as should be conferred upon him by the Commissioner of Finance in writing.*

The cause was taken under advisement by the court, and, on September 24, 1937, the following judgment was duly entered in favor of the plaintiff:

''Now on this day this cause coming on for further hearing before the court, the Honorable Walter A. Higbee, the duly selected and qualified Special Judge of this court, and the court having previously heard the evidence of the plaintiff and of the defendants in open court, and having taken the case under advisement, and now being fully informed in the premises doth find the issues for the plaintiff and against the defendants and doth find from the evidence that the allegations of plaintiff's petition and of his reply are true, and that the plaintiff is entitled to have and recover of the defendants the sum of $300 with interest thereon from the 26th day of February, 1935, as a preferred claim and charge against the defendants.

''Wherefore, it is ordered, adjudged and decreed by the court that plaintiff have and recover of defendants as a preferred claim and charge the sum of $300 and interest thereon from February 26th, 1935, and for his costs.''

Thereupon, after an ineffective motion for a new trial, the defendants perfected their appeal to this court.

We are unable to agree with the findings of fact made by the learned trial judge to the effect that plaintiff has proven all the matters set out in his petition and reply.

The petition circulated by plaintiff and signed by the 66 depositors, did not contain any reference to Henry Early being the purchaser at $3000.

Plaintiff testified that it did state that the farm was to be sold to Mr. Early; that he was sure of that, and wound up by saying, "I can prove it." Yet the petition showed to the contrary.

The testimony shows conclusively that no petition for the sale of the 300 acre farm, or order to sell, prepared for and presented to Judge HILBERT to act on and sign or approve, containing the name of Henry Early as the proposed purchaser, was ever presented to Judge HILBERT until in the year 1936 when a sale was actually made to Henry Early at $3451, through the efforts of Mr. John H. Hunolt, a real estate agent.

Mr. McNally as a witness denied that he ever offered plaintiff Davis $300 or anything for selling the farm and testified that he never offered him anything for buying the land at $3000 and never offered him all over $3000 which the land might be sold for as his commission.

The contract which plaintiff had drawn up between himself and Henry Early was to the effect that he (plaintiff) was to deed the land to Early at $3300 consideration.

Plaintiff denied in his reply that he had any agreement with McNally that the sale of the land was conditioned on the approval of the circuit court or judge, yet the plaintiff admitted on the witness stand, that he himself took the petition to sell the farm to Judge HILBERT to obtain his approval of such sale to him (Davis).

Neither can we agree with the trial court's construction, of the law putting limitations on the powers of a special deputy commissioner, and practically making him commissioner to all intents and purposes. We quote from the record the trial court's construction as follows:

"But it is a matter of common knowledge that these deputy commissioners, their acts are the acts of the commissioner himself. Certainly he doesn't give them written authority in every instance. That would be a matter of physical impossibility. I think whatever the deputy does—this is just talk here now—is the act of the principal. Of course, he is limited by his statutory authority; but I don't believe, gentlemen, that the failure of the commissioner to give a written authority to sell each particular tract of land binds him or limits the authority of the deputy to do that. I think they are all limited by what the Circuit Court does. But go ahead. I am just talking here a little too much. I think it is a matter of no consequence to this suit that he failed to have written authority to sell this farm and I will so rule."

Section 5323, Revised Statutes Missouri, 1929 (Mo. Stat. Ann., sec. 5323, p. 7552), reads as follows:

"The commissioner may, by certificate, under his hand and official seal, appoint one or more special deputy commissioners as agent or agents to assist him in liquidating the business and affairs of any corporation or private banker in his possession. The commissioner

shall file such certificate in his office and shall cause a certified copy thereof to be filed in the office of the recorder of the county or city in which the principal office of such corporation or banker is located. He may, from time to time, delegate such special deputy commissioner to perform such duties connected with such liquidation as he may deem proper. He may employ such expert assistants and counsel and may retain such of the officers or employes of such corporation or banker as he may deem necessary in the liquidation and distribution of the assets of such corporation or banker. He shall require such security as he may deem proper from his agents and assistants appointed pursuant to the provisions of this section. The commissioner may appoint a bank or trust company as such special deputy commissioner and any bank or trust company receiving and accepting any such appointment, shall be fully authorized and empowered to do any and all acts and things which the commissioner may deem necessary and advisable in liquidating the business and affairs of the corporation or private banker in his possession. Provided however, that no salaries or attorney's fees shall be paid unless approved by the circuit court, or judge thereof in vacation, which circuit court, or judge thereof in vacation, may refuse to approve any salaries or attorney's fees that he may deem exorbitant, and set a less fee or salary, which less fee or salary shall be the amount paid.''

There is no doubt, as the trial court suggests, that many deputy special commissioners do act as if there were no restrictions or limitations on them, and as if they were standing in the shoes of the commissioner himself. No doubt they do many things without specific authority having been conferred on them by the commissioner so to do.

But there is no showing in the instant case that the Commissioner had any knowledge of the alleged contract between plaintiff and Deputy Commissioner McNally to pay plaintiff $300, or all over $3000 which the land might sell for, as commission.

The petition, to which the name of Commissioner Moberly was appended, was one to sell the farm to plaintiff Davis himself for $3000. The record fails to show any knowledge on the part of the Commissioner that any commission was to be paid to any one on account of the sale of the land. McNally, the Deputy Commissioner, denies that he made any contract with plaintiff to pay him any commission to sell the land to Henry Early. He contends that he was dealing with plaintiff as the purchaser himself, and that Henry Early did not enter into the picture at all until about a year later when the farm was sold to him at $3451. This sale was brought about through the efforts of John M. Hunolt, a real estate agent.

But suppose he had made a contract to pay plaintiff $300 commission for selling the farm to Early at $3300. Without written authority from the Commissioner, or subsequent ratification by him, the contract is void.

It will be noted that the certificate of appointment of Deputy Commissioner McNally restricts his acts to those which the Commissioner might delegate to him in writing. It might be said that persons dealing with the Deputy Commissioner might be misled by the apparent right to do anything in reference to the liquidation of the banks which he might deem necessary, but, evidently the lawmakers felt that it was a wise provision to create the right in the Commissioner to restrict the authority of the Deputy Commissioner. The Commissioner may delegate "from time to time" authority on the Deputy Commissioner to do certain acts in respect to the liquidation of banks. That would indicate that the lawmakers felt there might be times when more authority could properly be granted to Deputy Commissioners. But, in the instant case it is apparent that the right of the Commissioner to delegate much or little authority is a wise provision. Suppose that plaintiff should make his claim for commission to be $1000 instead of $300? That, of course, would be regarded as very excessive, and it is wise that the Deputy Commissioner has not the authority to make such contracts.

Such a construction of the statute as it exists would open the way to much fraudulent action. Suppose a dishonest special deputy commissioner was in charge of the liquidation of banks. He could secretly share these excessive commissions with the real estate agent, and, it must be remembered that the depositors and the persons to whom the assets of the defunct banks belong, are the ones who have to pay the bills and the creditors of the defunct institution are more fully protected by the limitations which the statute authorizes the Commissioner himself to put upon the acts of the Deputy Commissioner, because, of course, it is impossible for the Commissioner to know all the details of all the banks which have, or may, come under his charge, so that he has to rely largely upon Deputy Commissioners.

But we think it is a wise provision of the statute that these deputy commissioners are not clothed with authority to bind the assets of the failed banks to pay sums of money to carry out certain provisions which in their minds seem necessary to be done. But, regardless of whether that provision of the law be deemed a wise or an unwise one, the courts have no right to nullify or strike it down, even if they deem it unwise. The duty and the power to change bad laws into good laws rests in the lawmaking branch of the state or the nation.

There is another insuperable objection to the rendition of the judgment in this case. [Sec. 5324, R. S. Mo., 1929 (Mo. Stat. Ann., sec. 5324, p. 7553), reads as follows:]

"The commissioner shall pay out of the funds in his hands, of such corporation or private banker, all expenses of liquidation, subject to the approval of the circuit court, or judge thereof in vacation in the county or city in which the principal office of such corporation or banker is located, and upon notice of the application for such ap-

proval to such corporation or banker. He shall, in like manner, fix and pay the compensation of special deputy commissioners, assistants, counsel and other employes appointed to assist him in such liquidation pursuant to the provisions of this article. But a special deputy who, as examiner acting under commission from the commissioner, has previously examined the books, papers and affairs of such corporation, or banker, shall not receive compensation as such special deputy which exceeds by more than five ($5.00) dollars a day the *per diem* compensation received by him as examiner at the time of making such examination.''

It has been held in Farmers and Merchants Bank v. Coleman (Mo. App.), 9 S. W. (2d) 549, that the circuit court has not the right to determine in the first instance the amount which deputy commissioners and assistants may receive for their services, but the Commissioner has the original right to set the compensation and it is then within the power of the circuit court to determine whether it is excessive or otherwise. In other words, the circuit court has not the original right to fix the compensation, but it will be noted that the circuit court undertook to do so in the instant case.

It will be noted that the plaintiff in the instant case testified that he had been appointed as an assistant to do his particular work of finding a purchaser for the land in controversy. Therefore, his compensation, if he is entitled to any compensation, would first have to be fixed by the Commissioner and then pass under the review of the circuit court. In Farmers and Merchants Bank v. Coleman, *supra,* it was held that the circuit court had no jurisdiction in the first instance to pass upon the amount of compensation that a deputy commissioner or an assistant under the commissioner should receive, and dismissed the case because the case had reached that court with the circuit court under taking originally to determine the amount to which the assistant might be entitled, basing its decision upon the fact that it did not, at that stage, have any jurisdiction to pass on it.

In the instant case the circuit court is passing on the amount of compensation to be given to plaintiff as an assistant appointed by the Deputy Commissioner, which, under the authority of the case cited above, it had no right to do.

It follows from our view of the case that the judgment of the circuit court should be, and is hereby, reversed. *Becker* and *McCullen, JJ.,* concur.